IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 1:18-cr-354 |
| OMAR ENRIQUE ROMERO-CACERES | ) |
| | ) |

## MEMORANDUM OPINION

Defendant, a native and citizen of Honduras, is charged in Indictment with one count of illegally re-entering the United States after having been previously removed and deported subsequent to a felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(1). Among the pre-trial motions filed by defendant is a motion to dismiss the Indictment on the ground that *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), compels the conclusion that the immigration court lacked jurisdiction to order defendant's prior removal.

For the reasons that follow, defendant's motion to dismiss the Indictment must be denied.

### I.

Defendant initially entered the United States in Miami, Florida in January 2003 with a B-2 visitor visa that permitted defendant to remain in the United States for only six months. Defendant overstayed this period by approximately two and one-half years. In February 2006, Virginia State Police arrested defendant for possession of fraudulent identity documents in Fairfax County, Virginia. During the same month, defendant was charged in the Eastern District of Virginia with Identity Fraud, in violation of 18 U.S.C. §§ 1028(a)(7) and (c)(3). Defendant pled guilty to this charge on October 19, 2006 and was thereafter sentenced to twelve months imprisonment and two years of supervised release.

1

On May 22, 2007, Immigration and Customs Enforcement ("ICE") gave defendant a Notice to Appear ("May 2007 Notice"), requiring defendant to appear before an immigration judge to respond to the allegation that defendant had overstayed his B-2 visa without authorization. The May 2007 Notice notified defendant of this allegation and that this allegation, if true, warranted defendant's removal or deportation from the United States. Additionally, the May 2007 Notice stated:

> Representation: If you so choose, you may be represented in the proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organization who may be available to represent you at no cost will be provided with this notice.

The May 2007 Notice stated that the date and time of the hearing would be set later. No list of available pro bono legal services providers was attached to the May 2007 Notice.

On June 7, 2007, ICE moved defendant from Arlington, Virginia to Harlingen, Texas. On June 12, 2007, the immigration court sent a Notice of Hearing in Removal Proceedings ("June 2007 Notice") to defendant in the Willacy County Detention Center in Texas. This June 2007 Notice advised defendant of the date, time and location of the removal hearing and stated: "You may be represented in these proceedings, at no expense to the Government, by an attorney or other individual who is authorized and qualified to represent persons before an Immigration Court."

At the scheduled and noticed hearing on June 15, 2007, an immigration judge ordered defendant removed from the United States to Honduras (the "June 2007 Removal Order"). Defendant, who was present for the hearing and proceeded *pro se*, waived his appeal of the June 2007 Removal Order. On July 18, 2007, ICE then removed defendant from the United States.

Thereafter, at some unknown time, defendant illegally re-entered the United States. Then, on August 3, 2012, defendant was found in the United States and was charged with Illegal Re-

entry after a Conviction for a Felony, in violation of 8 U.S.C. § 1326(a) and (b)(1). On September 2, 2012, ICE reinstated defendant's June 2007 Removal Order.[1] On January 11, 2013, defendant pled guilty to the illegal re-entry charge, and on April 12, 2013, pursuant to the June 2007 Removal Order, ICE once again removed defendant from the United States to Honduras.

At some unknown time after this removal, defendant once again re-entered the United States illegally. Thereafter, on July 16, 2018, Virginia state police arrested defendant in Fairfax County, Virginia for Felony Hit and Run with Injury in violation of Va. Code § 46.2-894, Drunk in Public in violation of Va. Code § 18.2-388, and Reckless Driving in violation of Va. Code § 46.2-852. These charges remain pending. On or about July 29, 2018, ICE placed a detainer on defendant, who then fell to the ICE detainer on or about August 22, 2018.

In the motion to dismiss, defendant argues that because the May 2007 Notice failed to include the date and time of defendant's removal proceeding, the immigration court lacked jurisdiction to order defendant's June 2007 removal and hence defendant claims that the June 2007 Removal Order is invalid. Accordingly, defendant argues, the Indictment must be dismissed because defendant has not re-entered the United States subsequent to the entry of a valid order removing defendant from the country. *See United States v. Moreno-Tapia*, 848 F.3d 162, 165 (4th Cir. 2017) ("To win a conviction under § 1326, the government must prove, as an element of the offense, the defendant's prior removal or deportation."). Because defendant is barred from collaterally attacking the June 2007 Removal Order and related proceeding and because, alternatively, the immigration court did have jurisdiction to order defendant's June 2007 removal, defendant's motion to dismiss the Indictment must be denied.

---

[1] *See* 8 U.S.C. § 1231(a)(5) (providing that an alien's prior removal order is reinstated if the Attorney General finds that an alien has illegally re-entered the United States after having been removed pursuant to a removal order).

3

## II.

As an initial matter, defendant's motion must be denied because, under 8 U.S.C. § 1326(d), defendant is barred from challenging the June 2007 removal proceeding.

The Supreme Court in *United States v. Mendoza-Lopez*, 481 U.S. 828, 838–839 (1987), recognized that an alien charged with illegal re-entry, in violation of 8 U.S.C. § 1326, has a due process right to meaningful judicial review of the underlying removal proceeding. Thus, "where the defects in [the removal] proceeding foreclose[d] judicial review of that proceeding," the alien must have access to collateral judicial review of the alien's removal order in the alien's subsequent criminal proceeding under § 1326. *Id.* Consistent with *Mendoza-Lopez*, Congress enacted 8 U.S.C. § 1326(d), which provides that an alien charged with illegal re-entry may, in a criminal proceeding under § 1326, challenge the validity of the underlying removal order if the defendant demonstrates:

> (1) the [defendant] exhausted any administrative remedies that may have been available to seek relief against the order;
> 
> (2) the deportation proceedings at which the order was issued improperly deprived the [defendant] of the opportunity for judicial review; and
> 
> (3) the entry of the order was fundamentally unfair.

Thus, Congress has made clear that an alien who demonstrates these three prerequisites has been denied meaningful judicial review in the initial removal proceeding and thus has the right to attack collaterally the prior removal order and related proceeding under § 1326(d). Importantly, the three prerequisites are listed in the conjunctive, and thus, as the Fourth Circuit has recognized, the defendant must satisfy all three prerequisites in order to be able to challenge collaterally the underlying removal order. *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005). Therefore, defendant here may not challenge the June 2007 Removal Order unless he meets all three § 1326(d) requirements. But if defendant meets all three requirements, the Indictment's illegal re-entry charge under § 1326(a) and (b)(1) must be dismissed. *Id.*

## A.

An alien fails to exhaust his administrative remedies, and thus fails to satisfy the first § 1326(d) requirement, if the alien knowingly waived the right to appeal an immigration judge's order of deportation in the prior deportation proceedings. *United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir. 2005); *United States v. Johnson*, 391 F.3d 67, 77 (2d Cir. 2004). On the other hand, if the alien failed to appeal the immigration judge's order because the government did not give the alien proper notice of the removal hearing, the alien has met the exhaustion requirement. *El Shami*, 434 F.3d at 663.

The record in this case reflects that defendant knowingly chose to waive his right to appeal the June 2007 Removal Order to the Board of Immigration Appeals ("BIA").[2] Additionally, defendant does not contend that he lacked notice of the hearing or otherwise unknowingly waived his right to appeal. Instead, the record demonstrates that defendant was fully aware of and attended the June 2007 proceeding. And, as explained more fully, *infra*, the government gave defendant proper notice of the June 2007 hearing through the May 2007 Notice and the June 2007 Notice sent to defendant, which together informed defendant of the time, place, and date of the hearing. Thus, defendant, by knowingly waiving his right to appeal the June 2007 Removal Order, failed to exhaust his administrative remedies and cannot meet the first requirement of § 1326(d).[3]

---

[2] It is worth noting that this was not defendant's first opportunity to challenge the June 2007 Removal Order. The record reflects that defendant did not challenge the validity of the June 2007 Removal Order and the related proceeding in his January 2013 prosecution for illegal re-entry.

[3] Seeking to avoid this result, defendant argues that defendant is exempt from the exhaustion requirement because defendant's June 2007 Removal Order was void for lack of jurisdiction. In support, defendant cites *United Farm Workers of Am., AFL-CIO v. Arizona Agr. Employment Relations Bd.*, 669 F.2d 1249, 1253 (9th Cir. 1982), in which the Ninth Circuit held that under the *judicially-created* doctrine of exhaustion of administrative remedies, "[e]xhaustion of administrative remedies is not required where . . . the administrative proceedings themselves are void." Importantly, *United Farm Workers* did not arise in the immigration context nor did it address an alien's right to challenge a prior deportation order pursuant to the exhaustion requirement imposed by Congress in § 1326(d). Indeed, the Ninth Circuit in *United Farm Workers* acknowledged that Congress could enact exhaustion requirements greater than those imposed under the judicial doctrine of exhaustion. *Id.* Accordingly, *United Farm Workers* is inapposite to the instant case. In any event, it is nonetheless unnecessary to determine whether *United Farm*

**B.**

Similarly, the second § 1326(d) requirement is satisfied only where the alien in the prior deportation proceeding was deprived of the opportunity for judicial review of the immigration judge's deportation order. For example, an immigration judge deprives an alien of his opportunity for judicial review if the judge fails to give the alien an adequate explanation of the alien's right to appeal the deportation order and to apply for suspension of removal. *Mendoza-Lopez*, 481 U.S. at 840.

As already discussed, the record in this case makes clear that defendant was given notice of the June 2007 removal proceeding and indeed defendant attended that proceeding and waived his right to appeal the June 2007 Removal Order stemming from that hearing. And there is no evidence that the immigration judge failed to follow the requirements for properly advising defendant of his right to appeal the deportation order and to apply for suspension of removal. Thus, defendant cannot meet the second § 1326(d) requirement because defendant was not deprived of the opportunity for judicial review of the June 2007 Removal Order.

**C.**

Finally, defendant also fails to satisfy the third § 1326(d) factor, as there is no evidence in this record that the immigration judge's entry of the June 2007 Removal Order was fundamentally unfair. An alien can demonstrate that entry of a removal order is fundamentally unfair only if the alien shows, as did not occur here, that "(1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *El Shami*, 434 F.3d at 664 (internal quotes omitted). And due process in this context requires an alien

---

*Worker*'s holding should be applied to § 1326(d)'s exhaustion requirement because, as explained *infra* at part III, defendant's June 2007 Removal Order and related deportation proceeding were valid as the immigration court had jurisdiction.

facing removal to be provided with "(1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." *Id.* (internal quotes omitted).

Defendant does not contend that he was not provided with notice of the charge against him—overstaying his visitor visa without authorization—nor does he argue that he was denied a hearing before an appropriate tribunal.[4] Rather, defendant argues that his due process rights were violated because the government hindered defendant's ability to retain counsel for the removal proceeding, in violation of governing immigration law and regulations.[5] In this respect, defendant correctly observes that Congress has provided that an alien in a removal proceeding has the right "of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings." 8 U.S.C. § 1229a(b)(4)(a). Furthermore, immigration regulations require the immigration judge in a removal proceeding to "[a]dvise the respondent of the availability of pro bono legal services for the immigration court location at which the hearing will take place, and ascertain that the respondent has received a list of such pro bono legal service providers." 8 C.F.R. § 1240.10(a)(2).

The record in this case indicates that (i) the government failed to provide defendant with a list of available pro bono legal services providers and that (ii) the government re-located defendant from Arlington, Virginia to Harlingen, Texas sixteen days after serving defendant with the Notice

---

[4] Defendant does not argue that the Notice to Appear, which did not specify the date and time of defendant's removal proceeding, constituted a prejudicial violation of defendant's due process right. Indeed, such argument appears to be foreclosed on this record because the subsequent Notice of Hearing advised defendant of the time and date information, giving defendant adequate notice to appear at the removal proceeding, which he did.

[5] It is unclear whether this alleged defect in the June 2007 proceeding constitutes a failure to provide defendant with a "fair opportunity to be heard," which is the third due process guarantee to which an alien is entitled. *El Shami*, 434 F.3d at 664. Assuming without deciding that hindering defendant's ability to retain counsel did deprive defendant of a fair opportunity to be heard in a removal proceeding, defendant has nonetheless failed to show the proceeding was fundamentally unfair because, as described above, defendant cannot demonstrate prejudice.

7

to Appear. Thus, it is clear that the immigration court in defendant's June 2007 removal proceeding failed to ensure that defendant had received the list of available pro bono service providers to which he was entitled under the regulations. And it is possible that defendant's removal from Virginia to Texas further hindered defendant's ability to retain counsel for the immigration proceeding. Nonetheless, it is unnecessary to decide whether, on this record, defendant was deprived of his due process right to a fair hearing because it is clear that defendant suffered no prejudice from these alleged defects in the proceedings.

To show actual prejudice, an alien must demonstrate that but for the violation of his due process rights, there is a "reasonable probability" that the alien would not have been deported. *El Shami*, 434 F.3d at 665. Here, defendant has made no showing that he would not have been deported had defendant received a list of available pro bono attorneys or more time to find an attorney. To the contrary, the record persuasively indicates that defendant could not have produced any evidence to contradict the charges that defendant had overstayed his B-2 visitor visa, with or without counsel. Defendant's visa permitted defendant to remain in the United States only until June 30, 2003, and defendant was found and arrested in Virginia in February 2006. Moreover, because defendant's presence in Virginia was discovered through his arrest and conviction for identity fraud, there is no reason to believe that his removal would be canceled.[6] Thus, even if, assuming *arguendo*, defendant's due process rights were violated during the June 2007 removal proceeding, it is clear that defendant suffered no prejudice as a result. Accordingly, defendant cannot satisfy the third § 1326(d) requirement.

---

[6] In this respect, 8 U.S.C. § 1229b(b) provides that the Attorney General may cancel the removal of a deportable, nonpermanent resident alien who, *inter alia*, "has been a person of good moral character during such period" that the alien has been present in the United States.

For the reasons stated above, defendant has failed to meet not just one of the § 1326(d) requirements, but all three. It follows, therefore, that defendant is not entitled to challenge collaterally the validity of the June 2007 Removal Order and associated removal proceedings.

### III.

Next, assuming *arguendo* that defendant could clear the hurdle imposed by the three § 1326(d) requirements,[7] defendant's motion to dismiss the Indictment must nonetheless be denied because, contrary to defendant's argument, the immigration court did have jurisdiction to order defendant's removal in the June 2007 proceeding.

---

[7] Courts are split on the question whether § 1326(d) prohibits an alien who cannot meet that provision's three statutory requirements from collaterally attacking a removal order on the ground that the immigration court lacked jurisdiction to issue the order. Some courts have taken the position that whether an immigration court is vested with jurisdiction under 8 C.F.R. § 1003.14 is an issue of subject matter jurisdiction, which cannot be waived. Thus, according to those courts, an alien may collaterally attack a removal order for lack of jurisdiction even if the alien fails to satisfy the three § 1326(d) prerequisites. *See, e.g., United States v. Cruz-Jiminez*, No. A-17-CR-00063-SS, 2018 WL 5779491, at *2 (W.D. Tex. Nov. 2, 2018); *United States v. Zapata-Cortinas*, 2018 WL 4770868 at *4–5 (W.D. Tex. Oct. 2, 2018); *United States v. Virgen-Ponce*, 320 F. Supp. 3d 1164, 1166 (E.D. Wash. 2018). Other courts take the view that even assuming § 1003.14 pertains to the subject matter jurisdiction of the immigration court, § 1326(d) clearly prohibits an alien from collaterally challenging the validity of a removal order, without exception, unless all three statutory requirements are met. *See, e.g., United States v. Mendoza-Sanchez*, No. 17-CR-189-JD, 2018 WL 5816346, at *3 (D.N.H. Nov. 5, 2018); *United States v. Hernandez-Velasco*, No. CR-18-82-D, 2018 WL 5622285, at *3 (W.D. Okla. Oct. 30, 2018); *United States v. Briones-Herrera*, No. CR-18-214-D, 2018 WL 5315211, at *3 (W.D. Okla. Oct. 26, 2018); *United States v. Romero-Colindres*, No. 1:18-CR-00415, 2018 WL 5084877, at *1 (N.D. Ohio Oct. 18, 2018); *United States v. Larios-Ajualat*, No. 18-10076-JWB, 2018 WL 5013522, at *6 (D. Kan. Oct. 15, 2018); *United States v. Lira-Ramirez*, No. 18-10102-JWB, 2018 WL 5013523, at *5 (D. Kan. Oct. 15, 2018); *United States v. Munoz-Alvarado*, No. CR-18-171-C, 2018 WL 4762134, at *1 (W.D. Okla. Oct. 2, 2018); *United States v. Ibarra-Rodriguez*, No. CR-18-190-M, 2018 WL 4608503, at *2–3 (W.D. Okla. Sept. 25, 2018). The latter view—that § 1326(d) bars an alien from collaterally attacking a removal order on jurisdictional grounds unless the alien can satisfy the three 1326(d) requirements—is the better-reasoned approach because the mandate of § 1326(d) is clear and unequivocal: "In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order . . . unless the alien demonstrates that" the three statutory requirements are met. 8 U.S.C. § 1326(d); *see also United States v. Adams-Orozco*, 607 F.3d 647, 652 (10th Cir. 2010) ("Where, as here, the statute's language is plain and satisfied, the sole function of the courts' can only be to reinforce it according to its terms.") (internal quotes omitted). Moreover, as the Supreme Court made clear in *Mendoza-Lopez*, due process requires a court to review an alien's removal order in a § 1326 prosecution where the prior removal proceeding "effectively eliminate[d] the right of the alien to obtain judicial review." *Mendoza-Lopez*, 481 U.S. at 839. The alien's due process rights are therefore not violated by § 1326(d)'s clear mandate that an alien may not collaterally attack a removal order, including on jurisdictional grounds, where the alien waived his opportunity for judicial review of the removal order and associated proceeding. Yet, as district courts are split on this important question and in the absence of apposite circuit court authority, it is important to proceed to consider defendant's argument that the June 2007 Removal Order is void for lack of jurisdiction.

An immigration court is vested with jurisdiction over an immigration proceeding "when a charging document is filed with the Immigration Court" by the government. 8 C.F.R. § 1003.14. The term "charging document" refers to a notice to appear, a notice of referral to immigration judge, or a notice of intention to rescind and request for hearing by alien. *Id.* § 1003.13. Under the regulations, a "notice to appear" must contain the following information:

> (1) The nature of the proceedings against the alien;
>
> (2) The legal authority under which the proceedings are conducted;
>
> (3) The acts or conduct alleged to be in violation of law;
>
> (4) The charges against the alien and the statutory provisions alleged to have been violated;
>
> (5) Notice that the alien may be represented, at no cost to the government, by counsel or other representative authorized to appear pursuant to 8 CFR 1292.1;
>
> (6) The address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear; and
>
> (7) A statement that the alien must advise the Immigration Court having administrative control over the Record of Proceeding of his or her current address and telephone number and a statement that failure to provide such information may result in an in absentia hearing in accordance with § 1003.26.

*Id.* § 1003.15. The regulations further provide that a "notice to appear" must provide the following information to the immigration court:

> (1) the alien's names and any known aliases;
>
> (2) the alien's address;
>
> (3) the alien's registration number, with any lead alien registration number with which the alien is associated;
>
> (4) The alien's alleged nationality and citizenship; and
>
> (5) The language that the alien understands.

*Id.* And importantly, although the regulations also specify that the notice to appear shall "where practicable" include "the time, place and date of the initial removal hearing," such information is not listed as a requirement to vest the immigration court with jurisdiction. *Id.* § 1003.18. To the contrary, the regulations specifically provide that if the notice to appear does not contain the

information regarding the time, place and date of the removal hearing, the immigration court can provide the alien with that information in a subsequent notice of hearing. *Id.* Precisely this occurred here.

Here, defendant does not contend that the May 2007 Notice that initiated his June 2007 removal proceeding failed to comply with 8 C.F.R. §§ 1003.15 and 1003.18. Indeed, the record confirms that the May 2007 Notice fully complies with the regulations: (i) the government filed with the immigration court and served defendant with a notice to appear, the May 2007 Notice, that included all the information required by § 1003.15 and (ii) the immigration court subsequently sent defendant a notice of hearing, the June 2007 Notice, that notified defendant of the date, time and place of the removal hearing as prescribed by § 1003.18. It follows that the immigration court was properly vested with jurisdiction.

Seeking to avoid this conclusion, defendant argues that the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), requires that a notice to appear must include the date and time of the removal hearing and because defendant's May 2007 Notice failed to include this information that notice was ineffective to vest jurisdiction in the immigration court. That argument fails; *Pereira*'s narrow holding does not require a notice to appear to include the date and time of an alien's pending removal proceeding in order to vest the immigration court with jurisdiction over the proceeding.

In *Pereira*, the Supreme Court addressed only the "narrow question" whether the "stop-time rule" is triggered by a notice to appear that does not specify the time or place of the removal hearing. *Pereira*, 138 S. Ct. at 2110. The "stop-time rule," codified at 1229b(1)(A), provides that

11

for purposes of determining an alien's eligibility for cancellation of removal under § 1229b(b)(1),[8] the alien's period of continuous physical presence in the United States ends "when the alien is served a notice to appear under section 1229(a)."[9] Section 1229(a), in turn, provides that "written notice (in this section referred to as a 'notice to appear') shall be given . . . to the alien . . . specifying," *inter alia*, "[t]he time and place at which the [removal] proceedings will be held." On the basis of the plain text of § 1229b(d)(1)(A), which expressly references § 1229(a), the Supreme Court in *Pereira* concluded that a notice that does not specify the date and time of the removal proceeding is not a "notice to appear" that triggers the "stop-time rule." *Pereira*, 138 S. Ct. at 2114.

*Pereira*'s narrow holding is distinguishable from the question presented here, namely whether a notice to appear must contain the time, place and date of the removal hearing in order to vest the immigration court with jurisdiction. First, it is important to emphasize that the Supreme Court itself expressly defined the holding of *Pereira* as a "narrow" one. *Id.* at 2110. Indeed, *Pereira* specifically acknowledged that 8 C.F.R. § 1003.18 states that a "notice to appear" "need only provide 'the time, place and date of the initial removal hearing, where practicable," but declined to remark on the effect of the regulation outside of the context of the "stop-time rule." *Id.* at 2111–12 (quoting 62 Fed. Reg. 10332 (1997) (codified at 8 C.F.R. § 1003.18)). Thus, the scope of

---

[8] Under § 1229b(b)(1), nonpermanent residents who meet certain criteria, including, *inter alia*, continuous physical presence in the United States for ten years, may be eligible for cancelation of a removal order by the Attorney General.

[9] In full, the "stop-time rule" provides:
> For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end (A) except in the case of an alien who applies for cancellation of removal under subsection (b)(2), when the alien is served a notice to appear under section 1229(a) of this title, or (B) when the alien has committed an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title, whichever is earliest.

8 U.S.C. § 1229b(d)(1)(A).

*Pereira*'s holding, by its own terms, counsels against extending *Pereira*'s reasoning beyond the applicability of the "stop-time rule."

Second, and even more significantly, the Supreme Court's decision in *Pereira* turned on the explicit reference in the 1229b(d)(1)(A) "stop-time rule" to § 1229(a)'s definition of what constitutes a "notice to appear." Unlike the "stop-time rule," the regulations governing the vesting of jurisdiction in an immigration court do not reference § 1229(a)'s definition of a "notice to appear." *Compare* 8 C.F.R. §§ 1003.14–1003.15, *with* 8 U.S.C. § 1229b(d)(1). To the contrary, the regulations themselves prescribe the information that a notice to appear must contain in order to vest the immigration court with jurisdiction. 8 C.F.R. § 1003.15(b)–(c). In other words, in contrast with the "stop-time rule" construed in *Pereira*, the regulations governing the immigration court's jurisdiction provide no basis for incorporating § 1229(a)'s list of information to be included in a "notice to appear."

Finally, the text of § 1229(a) confirms that *Pereira*'s holding that § 1229(a) provides the definition of "notice to appear" for purposes of the "stop-time rule" should not be extended to add to the regulations' list of information that a notice to appear must include for purposes of vesting the immigration court with jurisdiction. In pertinent part, § 1229(a) provides, "written notice (*in this section* referred to as a "notice to appear") shall be given . . . specifying," as is relevant here, "[t]he time and place at which the proceedings will be held." (emphasis added). Thus, § 1229(a), by its own terms, purports only to define "notice to appear" as the term is used in the statute, such as in the "stop-time rule" in 1229b(d)(1)(A). *See Pereira*, 138 S. Ct. at 2114 ("Section 1229(a), in turn, clarifies that the type of notice 'referred to as a 'notice to appear'' *throughout the statutory section* . . . .") (emphasis added). Neither party argues that § 1229(a) or the neighboring statutory framework specifically addresses the vesting of jurisdiction in the immigration court. Indeed, §

1229(a) describes the information of which an alien subject to a removal proceeding must be given notice; the standard for determining how and when the immigration court's jurisdiction vests is found only in the regulations. *See* 8 U.S.C. § 1229(a); 8 C.F.R. § 1003.13–15. Accordingly, because § 1229(a)'s definition of "notice to appear" is expressly limited to the statute's use of the term "notice to appear," *Pereira*'s holding, which interpreted and applied § 1229(a), cannot be extended to modify the regulatory framework governing the immigration court's jurisdiction.[10]

The BIA's post-*Pereira* construction of the regulations adds further support to the conclusion that the holding of *Pereira* should not be extended to apply to the regulatory requirements for the contents of a notice to appear for purposes of vesting the immigration court with jurisdiction over removal proceedings. In *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441, 447 (BIA 2018), the BIA, post-*Pereira*, considered facts quite similar to the instant case and rejected precisely the same argument defendant raises here. Specifically, the BIA in *Bermudez-Cota* concluded that the holding of *Pereira* was limited to the meaning of the "stop-time rule" and that a notice to appear that fails to specify the time or place of his hearing is thus not legally defective for purposes of vesting the immigration court with jurisdiction. *Id.* at 443–44. Therefore, the BIA in *Bermudez-Cota* held, consistent with 8 C.F.R. § 1003.18 and pre-*Pereira* courts of appeals decisions,[11] that the immigration court is vested with jurisdiction when the government files a

---

[10] Additionally, it is worth noting that in *Pereira*, after holding that the "stop-time rule" had not been triggered in that case because the notice to appear there in issue did not include the date and time of the removal proceeding, the Supreme Court remanded the case for further proceedings. If the absence of the date and time information in the notice to appear was fatal to the immigration court's jurisdiction, one would have expected the Supreme Court to suggest that further removal proceedings should be terminated pending the filing and issuance of a notice to appear that contained the requisite information. Thus, *Pereira*'s disposition further militates against reading *Pereira* to stand for the proposition that an immigration court does not have jurisdiction unless the alien receives a notice to appear including the date and time of the removal proceeding.

[11] *See Popa v. Holder*, 571 F.3d 890 (9th Cir. 2009); *Gomez-Palacios v. Holder*, 560 F.3d 354, 359 (5th Cir. 2009); *Dababneh v. Gonzales*, 471 F.3d 806, 809-10 (7th Cir. 2006); *Haider v. Gonzales*, 438 F.3d 902, 907 (8th Cir. 2006).

notice to appear that complies with the regulations and that a notice of hearing specifying the date and time of the removal hearing may be sent subsequently to the alien. *Id.* at 445–47 (examining pre–*Pereira* cases from various circuits).

Notably, the BIA's decision in *Bermudez-Cota* is entitled to *Chevron* deference. This is so because the Supreme Court has held that "the BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms concrete meaning through a process of case-by-case adjudication." *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (internal quotes omitted). And it is well-settled that when the BIA construes the Immigration and Nationality Act ("INA"), a reviewing court asks first "whether 'the statute is silent or ambiguous with respect to the specific issue' before it"; if so, the second "'question for the court [is] whether the agency's answer is based on a permissible construction of the statute.'" *Id.* at 424 (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984)). An agency's construction of the statute is permissible unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844.

Because, as explained above, the INA is silent on the issue of when or how the immigration court is vested with jurisdiction, deference is due to the BIA's construction of the INA in *Bermudez-Cota* if such construction is permissible. And it is clear that *Bermudez-Cota* announces a permissible construction of § 1229(a). As several courts of appeals concluded before *Pereira*, it is reasonable to conclude that filing a notice to appear that lacks time and date information vests the immigration court with jurisdiction because § 1229(a)'s notice requirement may be satisfied by the combination of a notice to appear and a subsequent notice of hearing that does provide the

15

alien with the date and time of the hearing.[12] *Bermudez-Cota*, 27 I. & N. Dec. at 445–47 (discussing cases from the Fifth, Seventh, Eighth and Ninth Circuits). Thus, because Congress has not prescribed a process for vesting the immigration court with jurisdiction and because the regulations, as applied in *Bermudez-Cota*, permissibly construe and apply the statutory framework of the INA, deference is owed to the BIA's position in *Bermudez-Cota*.[13]

In sum, the immigration court in this case had jurisdiction to order defendant's removal in June 2007 because the May 2007 Notice filed with the immigration court complied with 8 C.F.R. § 1003.15. Further, defendant received proper notice that enabled defendant to appear at the removal hearing because defendant was subsequently served with a notice of hearing that included the time, place and date of the hearing, in accordance with 8 U.S.C. § 1229(a) and 8 C.F.R. § 1003.18.

---

[12] Of course, as the Supreme Court made clear in *Pereira*, it is of paramount importance that an alien receives notice of the time and place of his removal hearing "for without it, the Government cannot reasonably expect the noncitizen to appear for his removal proceedings." *Pereira*, 138 S. Ct. at 2115. But it is equally clear that this concern is adequately addressed through the two-step notice procedure prescribed by the regulations and the BIA— namely, that a notice to appear that does not specify time and place information vests an immigration court with jurisdiction over the removal proceedings and meets the notice requirements of § 1229(a), provided a notice of hearing specifying the time and place is later sent to the alien. *See Bermudez-Cota*, 27 I. & N. Dec. at 447; 8 C.F.R. § 1003.18.

[13] It does not appear that the Fourth Circuit or any other court of appeals has decided whether the holding of *Pereira* extends beyond the "stop-time rule" to modify the list of information that a notice to appear must contain to vest the immigration court with jurisdiction under the regulations. Thus, in the absence of any controlling authority, the BIA's position in *Bermudez-Cota* is particularly instructive, especially in light of the split among district courts on this issue. For cases that rejected the defendant's jurisdictional challenge to removal proceedings and declined to extend *Pereira*, *see United States v. Cortez*, No. 6:18-CR-22, 2018 WL 6004689, at *3 (W.D. Va. Nov. 15, 2018); *United States v. Saravia-Chavez*, No. 3:18-CR-00016, 2018 WL 5974302, at *3–4 (W.D. Va. Nov. 14, 2018); *United States v. Ramos-Delcid*, No. 3:18-CR-00020, 2018 WL 5833081, at *3–5 (W.D. Va. Nov. 7, 2018); *United States v. Romero-Colindres*, No. 1:18-CR-00415, 2018 WL 5084877, at *2 (N.D. Ohio Oct. 18, 2018); *United States v. Fernandez*, No. 7:18-CR-11-BO-1, 2018 WL 4976804, at *1 (E.D.N.C. Oct. 15, 2018); *United States v. Munoz-Alvarado*, No. CR-18-171-C, 2018 WL 4762134, at *1 (W.D. Okla. Oct. 2, 2018); *United States v. Ibarra-Rodriguez*, No. CR-18-190-M, 2018 WL 4608503, at *2–3 (W.D. Okla. Sept. 25, 2018); *United States v. Hernandez-Ruiz*, No. 17-cr- 226-ELR, Dkt. No. 49, at 2–3 (N.D. Ga. Sept. 21, 2018); *United States v. Veloz-Alonzo*, No. 1:18- CR-202-CAB, Dkt. No. 24, at 2–3 (N.D. Ohio Sept. 18, 2018); *United States v. Ornelas-Dominguez*, No. 5:18-cr- 110-CJC, Dkt. No. 42, at 8–9 (C.D. Cal. Aug. 10, 2018); *Ramat v. Nielsen*, 317 F. Supp. 3d 1111, 1117 (S.D. Cal. 2018). For cases holding that under the reasoning of *Pereira*, a "notice of appearance" that did not include time and place information was deficient to vest jurisdiction in the immigration court, *see United States v. Pedroza-Rocha*, No. 18-CR-1286 (W.D. Tex. Sep. 21, 2018); *United States v. Zapata-Cortinas*, 2018 WL 4770868 (W.D. Tex. Oct. 2, 2018); *United States v. Virgen-Ponce*, 320 F. Supp. 3d 1164, 1166 (E.D. Wash. 2018).

## IV.

For the reasons stated above, it is clear that defendant is barred by 8 U.S.C. § 1326(d) from collaterally challenging the June 2007 Removal Order and associated removal proceeding. Alternatively, the immigration court had jurisdiction to issue defendant's June 2007 Removal Order. Thus, defendant's motion to dismiss the Indictment must be denied.

An appropriate Order will issue.

Alexandria, Virginia
November 19, 2018

/s/
T. S. Ellis, III
United States District Judge